FILED
2013 Aug-05  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **LINNE ANNE HAMBY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 5:11-CV-03617-JFG** |
| | } | |
| **CAROLYN W. COLVIN, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Linne Anne Hamby brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI").  *See* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

This action arises from Plaintiff's application for SSI, filed protectively on March 31, 2009, alleging disability beginning March 31, 2009. (Tr. 18, 81-88, 95, 106).[1] The Social Security Administration denied Plaintiff's claim on June 8, 2009. (Tr. 61-66). Unsatisfied with the Commissioner's decision, Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 69). Plaintiff's request was granted, and a hearing was held on September 13, 2010, before Administrative Law Judge Patrick R. Digby ("ALJ"). (Tr. 40-59). In his decision dated November

---

[1] Plaintiff initially alleged she became disabled on May 1, 2005, but she amended her onset date via a letter sent by her representative to the Administrative Law Judge. (Tr. 81, 95).

18, 2010, the ALJ concluded that Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(A) of the Act since March 31, 2009, the amended alleged onset date. (Tr. 28). The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thus making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. § 1383(c)(3).

Plaintiff was forty-seven years of age at the time of the ALJ's decision. (Tr. 81). Plaintiff has a limited education (Tr. 27), and has prior work experience as a swing machine operator, sleeve setter, zipper setter and material handler. (Tr. 54-55). Plaintiff alleged disability based on back and neck pain. (Tr. 98).

At the ALJ hearing Plaintiff testified that the biggest reason she believed she was unable to work was her back pain. (Tr. 46). There is only one treatment note in the record for Plaintiff's back impairment. On February 11, 2005, Plaintiff was referred to Dr. Ellis, at the Decatur Orthopaedic Clinic by her gynecologist, Dr. Manifold. (Tr. 220). She reported she had suffered pain in her back for the previous year. *Id.* Examination of the lumbar spine revealed some tenderness in the midline and paraspinal muscles. *Id.* There was also some tenderness over the sacroiliac joints bilaterally. *Id.* Range of motion in the lumbar spine was within normal limits for flexion/extension, both of which "cause[d] a little bit of pain." *Id.* Plaintiff's neurological strength in the lower extremity myotomes was 5/5, and sensation was intact to the corresponding dermatomes.[2] *Id.* Plaintiff was able to heel

---

[2] "Testing of myotomes, in the form of isometric resisted muscle testing, provides the clinician with information about the level in the spine where a lesion may be present." http://en.wikipedia.org/wiki/Myotome. Dermatome is "the area of skin supplied with afferent nerve fibers by a single posterior spinal root." Dorland's Illustrated Medical Dictionary 449 (28th Edition).

and toe walk, and performed a deep knee bend without difficulty. *Id.* She had a positive Patrick's test bilaterally, and a negative straight leg raise test.[3] *Id.*

Dr. Ellis interpreted X-rays of the lumbar spine as showing "degenerative changes primarily at L5-S1 with loss of the normal disc height." *Id.* Otherwise he did "not detect any significant abnormality." *Id.* Dr. Ellis diagnosed degenerative disc disease and lumbosacral radiculitis. *Id.* Plaintiff was prescribed Relafen[4] and home exercise. *Id.* She was to return in about a month to assess her progress. *Id.*

Plaintiff saw Dr. Manifold on February 23, 2005, for treatment of "[s]ymptomatic uterine prolapse with pelvic pain and lower back ache." (Tr. 161). Plaintiff told Dr. Manifold that Dr. Ellis believed her "uterine prolapse and dysmenorrhea was contributing greatly to her added discomfort." *Id.* On February 24, 2005, Dr. Manifold discussed Plaintiff's condition with Dr. Ellis. *Id.* His note of the conversation indicates the treatment plan was for Plaintiff to proceed with surgical correction of her uterine prolapse, and then follow-up with Dr. Ellis for any residual spinal symptoms. *Id.*

On February 25, 2005, Dr. Manifold performed a total abdominal hysterectomy with removal of the left ovary. (Tr. 165). The follow-up treatment notes show Plaintiff was "doing very well since her surgery" when seen by Dr. Manifold on March 8, 2005. (Tr. 259). On June 16, 2005, Plaintiff was seen by Dr. Manifold, whose exam indicated evidence of early rectal prolapse. (Tr. 156). Plaintiff was to consult with Dr. Varner concerning corrective surgery. *Id.* Dr. Varner performed

---

[3] A positive Patrick's test indicates arthritis of the hip. Dorland's Illustrated Medical Dictionary 1688 (27th Edition). The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

[4] "Relafen belongs to a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). It works by reducing hormones that cause inflammation and pain in the body. Relafen is used to treat pain or inflammation caused by arthritis." http://www.drugs.com/relafen.html (visited Mar. 26, 2013).

corrective surgery on July 7, 2005. (Tr. 210). On August 9, 2005, Dr. Varner noted that overall Plaintiff was "doing quite well."  (Tr. 182). She was to return to her primary care physician for general care. *Id.*

There are no treatment notes in the record after August 2005 until January 14, 2009, when Plaintiff was seen by Dr. Sparks at the Decatur Orthopaedic Clinic. (Tr. 219). Plaintiff reported painful swelling in her right knee that started three days previously "when she fell in the bathtub." *Id.* Dr. Sparks suspected Plaintiff had sustained a medial collateral sprain. *Id.* She was put in a knee immobilizer and physical therapy was prescribed. *Id.* She was to return in 10 to 14 days if she did not respond to treatment. *Id.* On January 26, 2009, Dr. Sparks noted Plaintiff had not been to physical therapy. *Id.* She still had effusion and an MRI was ordered. *Id.* The MRI showed a tear in the posterior horn of the medial meniscus. *Id.* Plaintiff was referred to Dr. Tapscott for consideration of surgical repair. *Id.*

On February 17, 2009, Dr. Tapscott examined Plaintiff and recommended arthroscopic surgery of the right knee. (Tr. 218). Surgery was performed on February 18, 2009. (Tr. 221-222). On April 3, 2009, Plaintiff followed up with Dr. Tapscott. She continued to report "some pain and swelling," but she was ambulating better. (Tr. 218). At her April 8, 2009, follow-up with Dr. Tapscott, Plaintiff had good range of motion of her right knee and "some tenderness to palpation along the medial joint line." *Id.* Dr. Tapscott's plan was for Plaintiff to "continue with activities as tolerated" and return as needed. (Tr. 217). This is the final treatment note in the record.

On May 26, 2009, Plaintiff was referred by the Social Security Administration to Dr. Jampala, a rheumatologist, for a consultative physical evaluation. (Tr. 228-29). On physical examination Dr. Jampala noted mild swelling of Plaintiff's right knee. (Tr. 229). Flexion and

extension of the right knee was normal with no limitation, but there was pain on motion. *Id.* Plaintiff's gait was normal and she was able to walk on heels and tiptoes. *Id.* Extension and flexion of the lumbar spine was normal, but with pain. *Id.* Dr. Jampala observed no deformity in the lumbar spine. *Id.* Dr. Jampala included charts showing completely normal range of motion in all areas. (Tr. 230-231). Dr. Jampala's assessment was as follows:

> The patient is a 46-year-old white female with history of back pain, obesity, headaches, and hemorrhoids has back pain and knee pain. She does have some mild right knee swelling but otherwise her exam is the [sic] normal. She has no muscle weakness.

(Tr. 229).

At her ALJ hearing Plaintiff testified she was primarily unable to work due to her back pain. (Tr. 46-47). Plaintiff testified that ibuprofen no longer relieved her pain. (Tr. 48). Plaintiff testified she also had pain in her vaginal area, legs, and hips. (Tr. 50). She testified that her knee ached and was swollen all of the time. (Tr. 51). Plaintiff testified that because of her pain she had to lie down at least five times per day. (Tr. 51).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.

20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her application for SSI benefits, and that Plaintiff is afflicted with several severe impairments—degenerative disk disease (DDD) of the lumbar spine, history of medial meniscus tear status post arthroscopic partial medial meniscectomy, and obesity. (Tr. 20). However, the ALJ found

6

that despite these impairments, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 21). After consideration of the record, the ALJ then determined that Plaintiff has the residual functional capacity to lift and carry twenty pounds occasionally, and ten pounds frequently. *Id.* The ALJ determined Plaintiff "can sit a total of six hours and stand and/or walk a total of six hours with normal breaks during an eight-hour workday." *Id.* Finally, the ALJ found that Plaintiff is capable of performing past relevant work "as a sewing machine operator, specifically a sleeve setter and a zipper setter." (Tr. 26). Based upon this analysis, the ALJ concluded that Plaintiff is not disabled. (Tr. 28).

## III.    Plaintiff's Argument for Reversal

Plaintiff presents two arguments why this court should reverse the decision of the ALJ. First, Plaintiff contends "the ALJ erred in failing to include non severe impairments in his residual functional capacity findings." (Pl.'s Mem. 6). Second, Plaintiff contends the ALJ committed error by failing to "properly consider Plaintiff's impairments in combination." (Pl.'s Mem. 8).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner;

instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that correct legal standards were applied. The court addresses Plaintiff's arguments below.

### A.     The ALJ Did Not Err in Failing to Include Plaintiff's Nonsevere Impairments in His RFC Finding.

Plaintiff's first argument is directed to Plaintiff's alleged gynecological and abdominal symptoms. Specifically, Plaintiff testified that she had episodes of rectal bleeding when using the bathroom once or twice per month. She attributed this to her back problems. (Tr. 49-50). Her testimony of other symptoms from her alleged gynecological and abdominal impairments was as follows:  "My vaginal area, my back, my legs, my hips. I hurt. I just hurt."  (Tr. 50). Much of Plaintiff's argument relates to conditions for which Plaintiff had corrective surgery in 2005.

The ALJ went into some detail discussing these alleged impairments in his decision. The ALJ concluded his discussion of these alleged impairments as follows:

> The undersigned finds there is no medical evidence to support these allegations by the claimant and her representative. No treating or consulting doctor has diagnosed a current and ongoing impairment of the claimant's abdominal organs or rectum since 2005. No treating or consulting doctor has assessed the claimant has work-related limitations due to such impairments since her recovery form her 2005 surgeries.

(Tr. 21). Because the ALJ concluded Plaintiff had no work-related limitations due to these alleged conditions, they would not change the ALJ's RFC finding. Therefore, the ALJ properly considered the vocational impact of Plaintiff's nonsevere impairments in determining  her RFC. Substantial evidence supports the ALJ's decision not to include restrictions from Plaintiff's nonsevere impairments in his RFC determination.

### B.     The ALJ Properly Considered Plaintiff's Impairments in Combination.

Plaintiff argues the ALJ did not consider Plaintiff's degenerative disc disease of the lumbar spine, history of medial meniscus tear status post arthroscopic partial medial meniscectomy, and obesity in combination. (Pl.'s Mem. at 8.)  Plaintiff's argument on this issue is as follows:  "The ALJ recites the evidence documenting these impairments, yet, nowhere in his decision does he properly consider these impairments in combination."  Id. Plaintiff does not explain how the combination of these impairments allegedly render the ALJ's RFC finding incorrect. Moreover, as the record readily evidences, the ALJ did indeed consider the combination of these impairments.

In his decision the ALJ discussed Plaintiff's obesity. He noted that Social Security Ruling 02-01p "directs that obesity will be considered . . . when alone <u>or in combination with other impairments</u> it significantly limits an individual's physical or mental ability to do basic work activities."  (Tr. 26 (emphasis added)). The ALJ concluded that Plaintiff's back and right knee

impairments were conditions that could be exacerbated by obesity. *Id*. However, he concluded "that even with the presence of obesity, these alleged difficulties have not been shown by objective, medical findings to have resulted in severe limitations in her ability to perform work-related activities." *Id*.

The ALJ also considered Plaintiff's impairments in combination in other portions of his opinion. In considering Plaintiff's allegations of pain the ALJ considered pain from both Plaintiff's back impairment and her knee impairment:  "Although the claimant may experience some pain and some functional limitations due to her back and right knee impairments, the evidence of record indicates she is capable of performing the work-related activities as set forth in Finding No. 5." *Id*. Therefore, the ALJ properly considered Plaintiff's impairments in combination.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

DONE and ORDERED this _____5th_____ day of August, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE